IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

**TYLER C. FRICK**

   Plaintiff,

v.

Case No.   26-cv-55-wmc
[to be assigned by Clerk]

**U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT;**

**SCOTT TURNER, in his official capacity as Secretary of HUD**

   Defendants.

# COMPLAINT

## I. INTRODUCTION

Plaintiff Tyler Frick is a legally disabled resident of Wisconsin who applied for public housing and requested a reasonable accommodation. Plaintiff's treating psychiatrist has confirmed in writing, many times, that he has a severe mental health condition causing permanent disability, and the Social Security Administration has determined him legally disabled, and that stable, low-income housing could significantly improve his psychological stability and quality of life.

On May 9, 2025, Plaintiff submitted a completed application for the Low Income Housing program with the Wisconsin Rapids Housing Authority (WRHA), upon being told Section 8 was not eligible for open applications at the time. Understandably, he requested a reasonable accommodation (a housing preference on the waitlist) and provided a medical letter from his board-certified psychiatrist in support, confirming a preference would significantly improve his mental health, due to his unstable living situation at that time. WRHA leadership (the Executive Director herself) refused to grant or even review this accommodation request, stating only that its "current policy does not support" the documentation he provided. WRHA then supposedly placed Plaintiff on the waiting list without any individualized assessment. This conduct is a denial of access to the reasonable accommodation and preferential treatment provisions of fair housing law to which Plaintiff is entitled under federal law.

After exhausting his administrative remedies, Plaintiff filed a formal housing discrimination complaint with HUD on June 5, 2025, citing overt disability discrimination under the Fair

Housing Act, Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act for refusal to acknowledge a reasonable disability accommodation in federally-assisted housing. HUD failed to properly process or even acknowledge Plaintiff's complaint, in violation of its statutory and regulatory duties, until congressional level escalation was finally initiated by Plainitff. This action follows.

## II. PARTIES TO COMPLAINT

**1. Plaintiff** TYLER C. FRICK is an individual residing in Wisconsin Rapids, Wisconsin. Plaintiff is a qualified person with a legal disability under the Fair Housing Act, 42 U.S.C. § 3602(h), and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Plaintiff receives Social Security Disability Insurance (SSDI) and submitted a formal housing discrimination complaint to HUD in June 2025.

**2. Defendant** U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT ("HUD") is a federal executive agency headquartered in Washington, D.C. HUD is responsible for administering and enforcing the Fair Housing Act and Section 504 of the Rehabilitation Act, including the investigation of housing discrimination complaints.

**3. Defendant** SCOTT TURNER is the Secretary of the U.S. Department of Housing and Urban Development and is sued in his official capacity in that role only. As Secretary, he is responsible for the overall oversight and enforcement of federal fair housing laws and for ensuring that HUD carries out its statutory duties in accordance with law.

## III. JURISDICTION & VENUE

This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under federal civil rights statutes and regulations. Venue is proper in the Western District of Wisconsin because a substantial part of the events giving rise to the claim occurred here (Plaintiff resides here and applied to the local housing authority), and because one defendant (the HUD Secretary) is a federal official such that the action may be brought in the district where Plaintiff resides (and no real property involved).

The following federal laws and constitutional provisions are directly at issue:

- **28 U.S.C. § 1361** (mandamus jurisdiction over U.S. officers).
- **42 U.S.C. §§ 3601–3619** (Fair Housing Act, especially §§ 3604(f) and 3608).
- **29 U.S.C. § 794** (Section 504 of the Rehabilitation Act).
- **5 U.S.C. § 706(1)** (Administrative Procedure Act, empowering courts to compel agency action unlawfully withheld or unreasonably delayed).

## IV. FACTUAL BACKGROUND

Initial Housing Discrimination Complaint (June 2025)

1. In May 2025, Plaintiff Tyler Frick applied to the Wisconsin Rapids Housing Authority (WRHA) for a public housing program. Along with his application, on May 9, 2025, Plaintiff submitted a reasonable accommodation request supported by a letter from his treating physician. Plaintiff's doctor advised that due to Plaintiff's mental disability, he should be granted an admissions preference or expedited placement on the housing waitlist as an accommodation for his disability. Plaintiff's request was a lawful exercise of his rights under federal disability nondiscrimination laws.
2. The WRHA refused to consider or grant the reasonable accommodation. The WRHA's Executive Director responded that their "current policy does not support the specific documentation" provided by Plaintiff, and thus they would not honor the requested preference. Instead, Plaintiff was simply placed on the standard waiting list. WRHA did not engage in any interactive process or individualized review of Plaintiff's request. By delaying or outright denying an accommodation needed due to Plaintiff's disability, the WRHA effectively denied Plaintiff's request, leaving him in prolonged housing limbo.
3. The WRHA's conduct violated multiple federal laws. Refusing a reasonable accommodation for a person with a disability in housing is a discriminatory housing practice under the Fair Housing Act, 42 U.S.C. §§ 3604(f)(2) and (f)(3)(B). Because the WRHA is a public housing authority receiving federal funds, its actions also implicate Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794) and Title II of the ADA, which similarly prohibit disability discrimination and require public entities to accommodate disabilities. In Plaintiff's communications with HUD, he pointed out that WRHA's written refusal to accommodate – based solely on a policy excuse – was "legally indefensible," violating the Fair Housing Act, Section 504, and ADA regulations. In short, the Wisconsin Rapids Housing Authority was overtly failing in their duties, which is the reason why Plaintiff reached out to HUD, the federal agency that sets federal standards, provides capital, and monitors compliance and enforcement of the same in public housing authorities.
4. On June 5, 2025, Plaintiff filed a formal housing discrimination complaint with HUD's FHA Complaint Portal citing WRHA's failure to accommodate his disability. The complaint was accepted and acknowledgment confirmed via electronic mail.
5. Plaintiff's Escalation for Acknowledgment: Days went by and HUD refused to acknowledge the complaint whatsoever. Plaintiff received no confirmation or substantive response, neither automated or direct. On June 9, 2025, worried by HUD's silence, Plaintiff took the extraordinary step of escalating his concerns to senior HUD officials. He sent written communications to HUD leadership, starting with General Deputy Assistant Secretary for HUD FHEO, Kevin Cooke, who ignored each and communication and elected to route the matter to nobody. Plaintiff eventually reached out via fax and email to HUD Secretary Scott Turner's office itself and even copied the HUD Inspector General's office. This outreach at the very top of HUD was an attempt to ensure his complaint did not slip through the cracks, during a period where the need for housing was medically documented as dire. No HUD official gave any of the communications any acknowledgment or routed to a department that could help with Plaintiff's simple status

requests. After another week passed with no meaningful response, Plaintiff escalated the matter – this time contacting U.S. Senator Tim Scott, Chairman of the U.S. Senate Committee on Banking, Housing and Urban Affairs. It was only after involvement at the congressional level that HUD's Region V office finally engaged in the intake process.
6. Requests for Expedited Processing: Given Plaintiff's disability and urgent need for stable housing, he specifically invoked his legal right for HUD to expedite the processing of his complaint as a reasonable accommodation. In communications to HUD (including the emails to HUD leadership in June 2025), Plaintiff invoked HUD's duty under 24 C.F.R. § 103.1(d) to accommodate disabled complainants. He noted that his case "concerns housing access for a federally recognized disabled person" and argued that expedited processing was not optional but legally required under the circumstances. Despite this, HUD never acknowledged or responded to the request for accommodation. HUD did not treat Plaintiff's complaint with any noted urgency. There is no indication that HUD expedited the investigation timeline or made any accommodation in the handling of the case, even though HUD's own regulations make clear the legal mandate on procedures to accommodate participants with disabilities and Plaintiff explicitly asked for such consideration. The lack of response to this request is itself a failure by HUD to comply with its obligations toward a person with a disability in its processes.
7. Intake Experience: HUD opened the case Frick v. Wisconsin Rapids Housing Authority, Inquiry/Case No. 835182. The complaint was filed under the Federal Fair Housing Act, 42 U.S.C. §§ 3601–19. Because the respondent WRHA is a recipient of federal financial assistance, HUD also accepted the complaint for investigation under Section 504 of the Rehabilitation Act, and had Plaintiff sign a form confirming the 504 status and authorization permitting HUD to disclose his identity as needed for the investigation. HUD scheduled an intake interview (via Microsoft Teams on July 10, 2025) and subsequently sent the formal complaint for Plaintiff's signature on July 14, 2025. HUD sent Plaintiff a formal acknowledgment and notification letter (via email and certified mail) confirming that the complaint was officially filed as of July 14, 2025. HUD also provided the WRHA with a copy of the complaint, as required by law, and assigned a Region V intake specialist to the case.
8. HUD's Complete Abandonment of Case: After the initial flurry of activity in July 2025 (intake interview, complaint filing, notices sent), and following the CI Inquiry phone call with HUD Region V leadership, communication on the case went completely silent and dark. As of the date of this Complaint, January 22, 2026, approximately 6 ½ months have passed since HUD officially filed the case on July 14, 2025, over 7 ½ since the filing of the initial complaint on June 5, 2025 – HUD has neither completed the investigation nor issued any findings or determinations, or reason for why Plaintiff's case was abandoned and buried. HUD has also not provided the required written notification of delay explaining why the 100-day deadline was missed. The 100-day period (which expired around late October 2025) came and went without any letter or update from HUD documenting reasons for delay, as mandated by 42 U.S.C. § 3610(a)(1)(C). In effect, HUD has abandoned Plaintiff's complaint after formally accepting it. There is no indication that an investigative report, interviews, or a formal determination have been completed. HUD's inaction has left Plaintiff's case in limbo, and Plaintiff himself in the lurch, with no timeline for resolution.

Plaintiff's Current Housing and Continued Need for HUD's Assistance

1. Given HUD's abandonment, and the WRHA's complete refusal to assist, Plaintiff was forced to secure housing on his own in the private market to avoid homelessness or further instability. In October 2025, Plaintiff entered into a lease for a private residence in Wisconsin Rapids, WI. The apartment is intended as a *stopgap* solution given the failure of the public housing system to accommodate him. While it provides a roof over Plaintiff's head, it is not ideal for his disability-related needs and places significant financial strain on him (public housing would have been income-based rent). Plaintiff's need for a housing accommodation did not disappear – it was simply not met by the public agency. He had to make do with a private rental, which is a direct consequence of HUD and WRHA's failure to act.
2. In late 2025, new issues began to arise related to Plaintiff's private housing situation. Out of caution and to protect his rights, Plaintiff reluctantly reached out to HUD for assistance regarding his fair housing rights in his current housing. Plaintiff essentially sought guidance or proper procedures from HUD to ensure that his rights under the Fair Housing Act (FHA) would be respected by his private landlord, especially given his ongoing disability needs. This could include, for example, ensuring he would receive any reasonable accommodations required in the private rental context, or preventing any discriminatory treatment. Plaintiff's outreach to HUD about his private housing was done in good faith– having been left once before without support, Plaintiff was being proactive to avoid another potential civil rights violation.
3. HUD's Continued Inaction: HUD's response to Plaintiff's request for help in his current private housing matter was met the exact same way – with silence. In sum- HUD has chosen to handle this simple request in the same manner it did with Plaintiff's original complaint – *ignoring it*. Plaintiff has, to date, received no meaningful response from HUD regarding his inquiries about the private housing issue. In essence, HUD's pattern of unresponsiveness and delay has continued, now extending from the public housing complaint to Plaintiff's attempts to secure his FHA rights in his new living situation. The pattern suggests deliberate and willful avoidance of Plaintiff.
4. It should be noted that, as of the filing of this lawsuit, Plaintiff is not accusing his current landlord of any discrimination in this Complaint. Plaintiff's intent has been *preventative* – he sought out HUD for proper options to notify and educate his landlord about his rights have HUD available to assist if needed. However, HUD's failure to engage leaves Plaintiff without official support or recourse should an issue arise. This lack of HUD backing is significant because it undermines the assurances of rights under the Fair Housing Act. Plaintiff should not have to live in fear of potential discrimination without the agency tasked with enforcement willing to even respond to his concerns.
5. In summary, HUD's inaction on multiple fronts has left Plaintiff in an untenable position: His original disability discrimination complaint against a public housing authority has effectively died in the administrative process with no outcome or explanation, and his subsequent attempt to secure HUD's help in a private housing context has been met with the same silence exhibited when Plaintiff filed the original complaint. Plaintiff has exhausted all reasonable avenues within the agency. More than 180 days have elapsed

since filing his HUD complaint, satisfying any notion of administrative exhaustion. In fact, under HUD's own rules, if an investigation is not resolved in 180 days, a complainant may proceed to court for relief. HUD has failed to make a finding or even provide the required status notices, freeing Plaintiff to seek judicial intervention. Every additional day of delay is a day Plaintiff remains without the housing stability and accommodations he needs. Therefore, Plaintiff turns to this Court for relief, not to demand a particular outcome from HUD's investigation, but to restore movement to a process that has unlawfully been carried out from commencement to present.

## V. STATEMENT OF CLAIMS

**COUNT I- ADMINISTRATIVE PRODCEDURE ACT (5 U.S.C. §§ 555(b), 706(1))** - Unlawful Withholding and Unreasonable Delay of Agency Action –

&

**FAIR HOUSING ACT (42 U.S.C. § 3610(g)(1))** — 100-day deadline for HUD to issue determination

Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

The Fair Housing Act (FHA) requires HUD to investigate housing discrimination complaints promptly and, absent special circumstances, to complete an investigation within 100 days of filing. 42 U.S.C. § 3610(a)(1)(B)(iv) mandates that HUD **shall** investigate and complete the investigation within 100 days after a complaint is filed, unless it is impracticable to do so. If HUD cannot meet this 100-day deadline, it must notify the complainant and respondent in writing of the reasons for the delay. 42 U.S.C. § 3610(a)(1)(C); 24 C.F.R. § 103.225. These requirements are not optional; they are statutory duties designed to protect the rights of aggrieved persons and to ensure transparency in HUD's enforcement process.

In Plaintiff's case, HUD has failed to perform these mandatory, non-discretionary duties. The 100-day period from the official filing (July 14, 2025) expired on or about October 22, 2025. HUD neither completed the investigation by that date nor provided any written notice explaining why it could not do so. This omission is a direct violation of 42 U.S.C. § 3610(a)(1)(C), which required HUD to notify Plaintiff of the reasons for delay. By withholding both the investigatory action and the required notification, HUD has acted "not in accordance with law" and in excess of its statutory authority.

The Administrative Procedure Act (APA), 5 U.S.C. § 706(1), empowers this Court to compel agency action that is "unlawfully withheld or unreasonably delayed." HUD's failure to timely investigate or issue a cause finding, as well as its failure to send the mandated delay notice, constitute agency action unlawfully withheld. Additionally, the prolonged inaction — now over

180 days with no end in sight — is unreasonably delayed by any reasonable standard, especially given the FHA's emphasis on speedy resolution.

HUD has no lawful justification for this delay. Even if HUD believed the investigation could not practically finish in 100 days, its duty was to notify the parties with reasons. HUD's complete silence suggests either neglect or an arbitrary decision to set aside Plaintiff's case. There is no indication that Plaintiff's conduct caused the delay (he responded promptly to HUD's inquiries and signed the complaint in July 2025). In fact, any "impracticability" is of HUD's own making, such as staffing or case load issues, which do not excuse non-compliance with a Congressional mandate. HUD's Office of Fair Housing and Equal Opportunity has acknowledged challenges in meeting the 100-day goal in general, but the law still requires notification of delays.

In this specific case, HUD's failure to act is particularly egregious given that the complaint was well-founded (detailing a prima facie failure-to-accommodate by a housing provider) and Plaintiff's circumstances were urgent.

Under the APA, Plaintiff has a right to relief because he is "suffering legal wrong" and is "adversely affected or aggrieved" by HUD's inaction. 5 U.S.C. § 702. The Fair Housing Act gave Plaintiff the right to an administrative resolution process, including investigation, possible conciliation, and a determination of whether his rights were violated, all within a reasonable time frame. HUD's inaction has effectively denied Plaintiff the benefits of that process. Moreover, by not issuing a determination, HUD has delayed Plaintiff's ability to seek alternative remedies. While Plaintiff retains the right to file a private civil action against the housing authority, the FHA's statute of limitations tolls during HUD's administrative process, and Plaintiff awaited HUD's actions in good faith. HUD's stonewalling has thus impeded Plaintiff's access to either administrative justice or a timely transition to judicial relief against the housing authority.

There is no other adequate remedy in a court for HUD's failure to act. Plaintiff cannot obtain relief for HUD's lapse through any other lawsuit or appeal; the only way to address an agency's failure to perform its duty is through an action like this one under the APA and mandamus statute. HUD's failure to investigate is not a matter of agency discretion in this context – Congress imposed clear duties and timelines in the Fair Housing Act. Therefore, this Court can and should order HUD to promptly do what the law requires: investigate and make a determination on Plaintiff's complaint, or otherwise close the case with an explanation. At minimum, HUD should be ordered to issue the overdue notice explaining the delay and a schedule for completion, though given the extreme delay, more direct relief (like a court-ordered deadline to finish the investigation or to issue a charge/no-charge decision) is warranted.

Affirmatively Furthering Fair Housing: HUD's prolonged inaction also runs contrary to 42 U.S.C. § 3608(d), which imposes an obligation on HUD to administer programs in a manner that affirmatively furthers the purposes of the Fair Housing Act. While §3608(d) may not provide an independent cause of action for private individuals in every circumstance, it underscores that HUD's mandate is to actively further fair housing, not passively allow meritorious complaints to languish. HUD's failure to address Plaintiff's case – thereby allowing a blatant instance of disability-based housing discrimination to go unremedied – is the antithesis of affirmatively furthering fair housing. It is evidence of arbitrary and capricious agency action (or inaction) and

abdication of HUD's core mission. This context strengthens Plaintiff's APA claim: HUD's delay is not only procedural but goes to the heart of the agency's statutory purpose, making judicial intervention all the more appropriate.

In conclusion, HUD's failure to complete the investigation or to provide required notifications within the statutory timeframe constitutes agency action unlawfully withheld and unreasonably delayed. Plaintiff is entitled under the APA to an order compelling HUD to carry out its duties. Specifically, Plaintiff seeks an injunction or writ requiring HUD to immediately take all steps necessary to process and resolve Complaint No. 835182 (Frick v. WRHA) without further delay, and to provide a full explanation for the delay to date. Additionally, any determination, finding, or closure that HUD issues must comply with the law and not be a perfunctory dismissal due to the lawsuit – Plaintiff simply requests a good-faith, timely completion of the investigation on the merits. Through this claim, Plaintiff does not ask the Court to decide the underlying fair housing dispute (e.g. whether WRHA violated the law) – rather, Plaintiff asks the Court to ensure that HUD does its job so that the administrative process yields that decision as intended by Congress.

**COUNT II – REHABILITATION ACT § 504 (29 U.S.C. § 794)** — Failure to Provide Reasonable Accommodation in Complaint Processing

Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, provides that no otherwise qualified individual with a disability shall, solely by reason of their disability, be excluded from participation in, denied the benefits of, or subjected to discrimination under any program or activity conducted by an Executive agency or receiving Federal financial assistance. HUD is an Executive agency, and its complaint processing functions are a program or activity subject to this provision.

HUD's own regulations further specify that the Department "will reasonably accommodate persons with disabilities who are participants in complaint processing." Plaintiff qualifies as an individual with a disability (mental health impairment) and was at all relevant times a participant in the HUD complaint process who required reasonable accommodations.

In June 2025, Plaintiff submitted a request for reasonable accommodation, asking HUD to expedite the complaint handling process due to the urgent impact of housing instability on his disability. This was a reasonable request and consistent with HUD's authority and past practices. Nonetheless, HUD neither acknowledged nor responded to the request, and failed to engage in any interactive process to explore or provide alternatives. The result was de facto denial.

Such inaction constitutes unlawful discrimination under Section 504. HUD failed to implement a reasonable accommodation despite knowing of Plaintiff's disability, despite having the capacity to expedite complaints when appropriate, and despite the request's urgency. There is no showing of undue hardship or fundamental alteration that would excuse compliance. HUD's delay disproportionately harmed Plaintiff as a person with a mental health-related disability.

This violation supports both injunctive relief and declaratory judgment. The Court should require HUD to retroactively recognize the accommodation request, explain the prior failure to act, and affirmatively implement reasonable modifications going forward. This includes expedited resolution, regular communication, and any other support reasonably necessary to address Plaintiff's needs and mitigate ongoing harm.

**COUNT III – MANDAMUS** (28 U.S.C. § 1361)

Plaintiff re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

In the alternative, Plaintiff seeks a writ of mandamus pursuant to 28 U.S.C. § 1361. That statute gives district courts jurisdiction to compel federal officers or agencies to perform duties owed to a plaintiff.

Here, HUD officials – including the Secretary of HUD, sued in his official capacity – owe Plaintiff non-discretionary legal duties under the Fair Housing Act and Rehabilitation Act. These include the duty to timely investigate complaints, issue findings or notifications as required by law, and make reasonable accommodations for disability-related needs.

Plaintiff has a clear legal right to these actions, and there is no adequate remedy at law for HUD's inaction and failure to accommodate. HUD's conduct reflects a persistent refusal to perform mandatory duties, even after Plaintiff reached out repeatedly and escalated the matter as high as the Secretary of HUD.

Mandamus relief is appropriate because (1) Plaintiff has a clear right to the relief sought; (2) HUD has a plainly defined, ministerial duty to act; and (3) no other adequate remedy exists. A writ of mandamus should issue requiring HUD to complete the investigation, provide overdue notices, and implement accommodations consistent with the statutes and regulations described above.

These duties are not subject to HUD's whim. They are codified obligations, and the refusal to act undermines the very purpose of the Fair Housing Act's administrative framework. Judicial intervention is essential to protect Plaintiff's rights and restore accountability to the administrative process.

## VI. IRREPARABLE INJURY

Plaintiff's injuries are ongoing and cannot be remedied by money damages. His disability is severe and permanent, and his psychiatrist has emphasized that having stable housing can halt the deterioration of his mental health. As the doctor put it, Plaintiff's current situation is dire and "could significantly improve his psychological stability" if a housing preference is granted. Plaintiff himself openly told HUD that his current living situation was detrimental to his mental health", and that delays in relief will exacerbate that harm. These injuries – risk of serious

psychiatric decline and continued exposure to a medically dangerous environment – are inherently personal, imminent, and not compensable by money. If HUD's injunctive relief is denied, Plaintiff may suffer irreversible psychological harm and may also lose the opportunity to secure housing (given the limited availability of public housing). By the time any damages judgment could be paid, the chance to obtain a reasonable accommodation could be gone. In short, continuing to disregard Plaintiff's rights inflicts irreparable harm on a disabled individual seeking only the relief expressly provided by federal law.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court provide the following relief:

1) **Declaratory Judgment**: Declare that HUD's failure to timely investigate and issue a determination on Plaintiff's housing discrimination complaint (HUD Inquiry/Case No. 835182), and its failure to provide written notice of delay with reasons, violates the Fair Housing Act, 42 U.S.C. § 3610, and the Administrative Procedure Act. Further declare that HUD's failure to provide reasonable accommodation to Plaintiff in the complaint process violates Section 504 of the Rehabilitation Act and HUD's regulations.

2) **Injunctive and Mandamus Relief**: Issue an injunction and/or writ of mandamus compelling HUD, by and through the Secretary of HUD in his official capacity, to promptly perform their mandatory duties with respect to Plaintiff's complaint and communications, including but not limited to:

   a. Resuming or reopening Plaintiff's July 2025 complaint and issuing a determination of whether there is reasonable cause to believe a discriminatory housing practice occurred—or taking other appropriate enforcement action—by a date certain set by this Court (to be as soon as practicable, given the already protracted delay).

   b. Providing a written explanation to Plaintiff and this Court (and to the respondent WRHA) for HUD's failure to meet the 100-day deadline, as required by 42 U.S.C. § 3610(a)(1)(C), in order to ensure transparency and accountability.

   c. Responding to Plaintiff's December 2025 outreach regarding his current housing situation and rights under the Fair Housing Act. HUD should be ordered to contact Plaintiff, determine the nature of his request, and either: (i) open a new fair housing investigation if a complaint has been effectively lodged, or (ii) provide appropriate technical assistance or guidance. HUD must not disregard or ignore Plaintiff's communications about ongoing or imminent fair housing concerns in his current residence.

3) **Court Oversight**: Retain jurisdiction over this matter and require HUD to submit periodic status reports detailing the progress of the investigation, accommodation implementation, and related actions, until full compliance is achieved. Such oversight is warranted in light of HUD's ongoing failure to respond meaningfully to Plaintiff's complaints and requests.

4) **Damages:** Plaintiff defers to the Court's discretion as to any award of damages.

5) And provide such further relief as this Court deems just and proper.

## VIII. CERTIFICATION & CLOSING

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**For Parties Without an Attorney:** I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully submitted this 22nd day of January, 2026.

**TYLER C. FRICK, Plaintiff**